1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10   ZEF SCIENTIFIC, INC.,                )    Civil No. 14CV1758 JAH (RBB)
                                          )
11                      Plaintiff,        )    ORDER GRANTING IN PART AND
     v.                                   )    DENYING IN PART MOTION TO
12                                        )    DISMISS; GRANTING LEAVE TO
                                          )    AMEND COMPLAINT
13   SHIMADZU SCIENTIFIC                  )
     INSTRUMENTS, INC. and DOES 1-        )
14   10, INCLUSIVE,                       )
                                          )
15                      Defendants.       )

16
          Before this Court is Shimadzu Scientific Instruments, Inc.'s ("defendant") motion
17
     to dismiss.  Doc. No. 5.  Plaintiff Zef Scientific, Inc. ("plaintiff") filed a response in
18
     opposition to defendant's motion to which defendant disputed in its reply brief.  Doc.
19
     Nos. 21, 22.  The Court vacated the hearing date and took the matter under submission
20
     without oral argument.  Doc. No. 23.  After careful consideration of the pleadings and
21
     exhibits, along with the record of this case, and for the reasons set forth below, this Court
22
     GRANTS defendant's motion to dismiss.
23
                                   BACKGROUND[1]
24
          On July 28, 2014, plaintiff filed a complaint, against Shimadzu Scientific
25
     Instruments, Inc. And Does 1-10 ("defendants"), asserting claims under the Sherman Act,
26
     15 U.S.C. §§ 1 and 2, the Cartwright Act, Cal. Bus. & Prof. Code § 16720, while alleging
27

28        [1] All facts stated herein are taken as true and from the Complaint, the operative document in
     Rule 12(b)(6) analysis.

tortious interference with contractual relations and prospective business advantage claims, and unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 17200. See Doc. No. 1.

In its complaint, plaintiff alleges that defendant is a leading manufacturer of high quality analytical instrumentation and laboratory equipment consisting mainly of liquid chromatography and mass spectrometer equipment ("Shimadzu equipment"). Id. at ¶ 12. The relevant product market is the service and repair of Shimadzu equipment as the equipment involves sophisticated technology and is expensive to replace. Id. at ¶¶ 11, 13. Like plaintiff, an independent service organization ("ISO"), defendant is engaged in the relevant market, making defendant one of plaintiff's direct competitors. Id. at ¶¶16-18. Defendant holds approximately 80% of the market share for service and repair of Shimadzu equipment in the United States. Id. at ¶ 23, 67.

Defendant is the sole source of genuine Shimadzu equipment and parts for repair as all Shimadzu parts and most Shimadzu consumables are only made by defendant. Id. at ¶¶ 19-20. Plaintiff has entered into service contracts with Shimadzu equipment owners ("customers"), and plaintiff alleges that defendant has knowledge of its service contracts and need to purchase Shimadzu parts to fulfill those contracts. Id. at ¶¶ 29-31. Previously, defendant supplied plaintiff with Shimadzu parts at list price, on which plaintiff built a business model. Id. at ¶¶ 32-33.

Plaintiff alleges that, as early as July 29, 2010 and thereafter, defendant imposed a new repair parts policy on plaintiff's account. Id. at ¶¶ 34-37. Although defendant still offers Shimadzu parts at list price, the repair parts policy entails "flagging" plaintiff's orders, increasing the prices of its parts by 40% above the list price on sales to plaintiff, and requiring plaintiff to provide the serial number of the instrument to be serviced. Id. at ¶¶ 36, 39-42. Plaintiff alleges that its reputation and relations with its customers suffer injury due to the delay in processing orders caused by the request of additional information and the inability to maintain stock inventory. Id. at ¶¶ 44-52.

Defendant entered in an agreement with a major distributor, ThermoFischer. Id. at ¶ 53. On or about February 2014, plaintiff contacted ThermoFischer and placed an

1  order for certain Shimadzu equipment to fulfill a customer order.  Id. at ¶ 54.  However,

2  ThermoFischer refused to sell the equipment to plaintiff, and defendant expressly

3  indicated that its agreement with ThermoFischer prohibited ThermoFischer from fulfilling

4  plaintiff's order because plaintiff is a "third party service provider."  Id. at ¶¶ 55-58.

5       Plaintiff alleges there is no legitimate business justification for defendant preventing

6  it from filling orders other than the anticompetitive purpose(s) of: lessening competition;

7  interfering with contractual and prospective business advantage; and monopolizing the

8  relevant market.  Id. at ¶ 60.  Plaintiff also alleges that it continues to suffer

9  anticompetitive treatment via the repair parts policy and that its customers could

10  terminate their contracts, in which plaintiff would lose both Shimadzu equipment and

11  non-Shimadzue equipment business.  Id. at ¶¶ 62, 64.

12       Defendants filed a motion to dismiss all claims in the complaint for failure to state

13  a claim under Rule 12(b)(6).  See Doc. No. 5.  Plaintiff filed its response in opposition to

14  defendant's motion.  See Doc. No. 21.  Defendants filed a reply to plaintiff's response on

15  February 2, 2015.  See Doc. No. 22.

16                          DISCUSSION

17  I.     Rule 12(b)(6)

18       A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint.

19  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).   Dismissal is warranted under

20  Rule 12(b)(6) where the complaint lacks a cognizable legal theory.  Robertson v. Dean

21  Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490

22  U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis

23  of a dispositive issue of law.").  Alternatively, a complaint may be dismissed where it

24  presents a cognizable legal theory yet fails to plead essential facts under that theory.

25  Robertson, 749 F.2d at 534.  While a plaintiff need not give "detailed factual allegations,"

26  he must plead sufficient facts that, if true, "raise a right to relief above the speculative

27  level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).

28       "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

1    accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,

2    129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 547).  A claim is facially

3    plausible when the factual allegations permit "the court to draw the reasonable inference

4    that the defendant is liable for the misconduct alleged." Id.  In other words, "the non-

5    conclusory 'factual content,' and reasonable inferences from that content, must be

6    plausibly suggestive of a claim entitling the plaintiff to relief. Moss v. U.S. Secret Service,

7    572 F.3d 962, 969 (9th Cir. 2009).  "Determining whether a complaint states a plausible

8    claim for relief will ... be a context-specific task that requires the reviewing court to draw

9    on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

10    　　　In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the

11    truth of all factual allegations and must construe all inferences from them in the light most

12    favorable to the nonmoving party. Thompson v. Davis, 295 F.3d 890, 895 (9th  Cir.

13    2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  However,

14    legal conclusions need not be taken as true merely because they are cast in the form of

15    factual allegations. Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir. 2003); Western

16    Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  When ruling on a motion

17    to dismiss, the Court may consider the facts alleged in the complaint, documents attached

18    to the complaint, documents relied upon but not attached to the complaint when

19    authenticity is not contested, and matters of which the Court takes judicial notice. Lee

20    v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). If a court determines that

21    a complaint fails to state a claim, the court should grant leave to amend unless it

22    determines that the pleading could not possibly be cured by the allegation of other facts.

23    See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

24    II.    Antitrust

25    　　　A.    Antitrust Injury

26    　　　Antitrust laws are indifferent to an individual plaintiff's harm, as they were enacted

27    for the protection of competition not competitors. Brunswick Corp. v. Pueblo Bowl-O-

28    Mat, Inc., 429 U.S. 477, 489 (1977). To allege injury to competition, a claimant must,

1    at a minimum, sketch the outline of the antitrust violation with allegations of supporting

2    factual detail.  Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n, 884 F.2d 504, 508 (9th

3    Cir. 1989).   Plaintiffs may not substitute allegations of injury to the claimants for

4    allegations of injury to competition.  Plaintiffs must plead "antitrust injury," in addition

5    to, rather than in lieu of, injury to competition.  Brantley v. NBC Universal, Inc., 675

6    F.3d 1192, 1200 (9th Cir. 2012).  Plaintiffs must prove antitrust injury, which is to say,

7    an injury of the type the antitrust laws were intended to prevent and that flows from that

8    which makes defendants' acts unlawful.  Brunswick, 429 U.S. at 489.  To establish

9    antitrust injury, the Ninth Circuit requires allegations of: (1)unlawful conduct, (2) causing

10   an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and

11   (4) that is of the type the antitrust laws were in tended to prevent.  Am. Ad Mgmt., Inc.

12   v. Gen. Tel. Co. Of Cal., 190 F.3d 1051, 1055 (9th Cir. 1999).  In order to state a claim

13   successfully, plaintiffs must allege both that defendant's behavior is anti-competitive and

14   that plaintiff has been injured by an "anti-competitive aspect of the practice under

15   scrutiny."  Atl. Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 334 (1990).

16          B.      Market Power

17          There is no requirement that a Sherman Act claim be pled with specificity.  See

18   Cost Mgmt. Servs., Inc. v. Wash. Natural Co., 99 F.3d 937, 950 (9th Cir. 1996).  An

19   antitrust complaint therefore survives a Rule 12(b)(6) motion unless it is apparent from

20   the face of the complaint that the relevant market allegations suffer a fatal legal defect.

21   And since the validity of the "relevant market" is typically a factual element rather than

22   a legal element, alleged markets may survive 12(b)(6) scrutiny to reach factual analysis at

23   the summary judgment stage or trial.  See High Tech. Careers v. San Jose Mercury News,

24   996 F.2d 987,990 (9th Cir. 1993).

25          Under Section two of the Sherman Act, a monopolization claim requires: (1) the

26   possession of monopoly power in the relevant market and (2) the willful acquisition or

27   maintenance of that power as distinguished from growth or development as a consequence

28   of a superior product, business acumen, or historic accident.  Eastman Kodak Co. v. Image

1 <u>Technical Servs., Inc.</u>, 504 U.S. 451, 481 (1992).  Under the Sherman Act, a single brand

2 of a product can be a relevant market as determined by the choices available to consumers.

3 <u>Id.</u> at 482.  A defendant violates § 2 when it adopts a parts and service policies as part of

4 a scheme to use its market power "to foreclose competition, to gain a competitive

5 advantage, or to destroy a competitor."  <u>Id.</u> at 482-483.

6       C.    California's Cartwright Act

7      California's Cartwright Act prohibits any trust, which is defined as "a combination

8 of capital, skill or acts by two or more persons" for specified anti-competitive purposes.

9 Cal. Bus. & Prof. Code § 16720.  The Cartwright Act "is California's version of the federal

10 Sherman Act and sets forth California's antitrust laws."  <u>Cellular Plus, Inc. v. Superior</u>

11 <u>Court of San Diego County</u>, 14 Cal.App.4th 1224, 1232 (1993).   California courts

12 routinely apply the Cartwright Act by reference to the jurisprudence under the Sherman

13 Act.  <u>Filco v. Amana Refrigeration, Inc.</u>, 709 F.2d 1257, 1268 (9th Cir. 1983).  In order

14 to maintain a cause of action under the Cartwright Act, the following elements must be

15 established: (1) the formation and operation of the conspiracy; (2) illegal acts done

16 pursuant thereto; and (3) damage proximately caused by such acts.  <u>Kolling v. Dow Jones</u>

17 <u>& Co.</u>, 137 Cal. App.3d 709, 718 (1982).

18 III.    Interference Claims

19      To state a claim for interference with contractual relations, a claimant must plead:

20 (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this

21 contract; (3) defendant's intentional acts designed to induce a breach or disruption of the

22 contractual relationship; (4) actual breach or disruption of the contractual relationship;

23 and (5) resulting damage.  <u>Pac. Gas & Elec. Co. v. Bear Stearns & Co.</u>, 50 Cal.3d 1118,

24 1126 (1990).  Claims for tortious interference with contract do not require pleading that

25 defendant's conduct was independently wrongful because intentionally interfering with

26 a contract is a wrong in and of itself.  <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29

27 Cal.4th 1134, 1158 (2003).

28      Alternatively, to prove tortious interference with prospective economic advantage,

1  plaintiff must show: (1) an economic relationship between the plaintiff and some third
2  party, with the probability of future economic benefit to the plaintiff, (2) defendant's
3  knowledge of the relationship, (3) intentional wrongful acts on the part of defendant
4  designed to disrupt the relationship, (4) actual interference with or disruption of the
5  relationship, and (5) economic harm to the plaintiff proximately caused by the acts of the
6  defendant.  Milne Emps. Ass'n v. Sun Carriers, Inc., 960 F.2d 1401, 1411 (9th Cir. 1992).
7  "This tort...'protects the expectation that the relationship eventually will yield the desired
8  benefit, not necessarily the more speculative expectation that a potentially beneficial
9  relationship will arise.'" Korea Supply, 29 Cal.4th at 1164 (quoting Westside Ctr. Assoc.
10 v. Safeway Stores 23, Inc., 42 Cal.App.4th 507, 524 (5th Dist. 1996).  Unlike interference
11 with contractual relations, a plaintiff alleging prospective economic advantage interference
12 is required to show a defendant's independent unlawful act outside the interference itself.
13 Id. at 1153.  This requires that the act complained of be independently wrongful in
14 violation of some constitutional, statutory, regulatory, common law, or other determinable
15 legal standard.  Id. at 1159.  However, plaintiffs need not prove that a defendant
16 specifically intended to interfere with its business expectancy, but show the defendant
17 knew that the interference was certain or substantially certain to occur as a result of their
18 actions.  Id. at 1154 (internal citation omitted).  The intent requirement is the same for
19 claims of tortious interference with contract as it is for tortious interference with
20 prospective business advantage.  Id. at 1155-1157.

21                                    ANALYSIS

22      A.      Antitrust Injury

23      Defendant argues that plaintiff's federal and state antitrust claims fail as a matter
24 of law because plaintiff does not allege any plausible antitrust injury.  Doc. No. 5-1 at 12.
25 Specifically, defendant contends that plaintiff's assertions of a restrained competition in
26 its complaint are not supported with factual allegations, and the assertion fails to establish
27 an antitrust injury even if taken as true.  Id.  Defendant also contends the complaint does
28 not demonstrate how consumers or competition have been harmed, e.g., a decrease in

1    service providers or increased prices to consumers.  Id. at 14.  Lastly, defendant asserts

2    plaintiff's allegations that defendant's policies caused an increase in product acquisition

3    costs, lost profits, and lost customers do not constitute an injury to competition.  Id.

4         Plaintiff claims its antitrust injury is properly pled because the complaint alleges

5    that other competitors also suffer undue costs.  Doc. No. 21 at 16.

6         In its reply, defendant maintains that plaintiff's complaint alleges no facts showing

7    injury to competition.  Doc. No. 22 at 2.  Defendant argues that the consumer also must

8    suffer injury and plaintiff's failure to plead such injury to customers requires that

9    plaintiff's antitrust claims be dismissed in their entirety.  Id. at 2-3.

10        Although plaintiff's complaint alleges a number of negative consequences to itself

11   and other ISOs stemming from defendant implementing the repair parts policy, plaintiff

12   fails to allege the requisite antitrust injury to competition or consumers.   In the

13   complaint's "Injury to Competition" portion, plaintiff alleges, "[C]ompeting ISOs have

14   been and are being injured in their business and property by reason of the violations of

15   the antitrust laws by [defendant]." Doc. No. 1 ¶ 83.  Also, plaintiff alleges that

16   defendant's conduct causes antitrust injury to competition and consumers in that

17   competitor's ability to compete due to increased costs of repairs reduces consumer choices

18   and quality of consumer choices.  Id. at ¶ 84.  Plaintiff construes any potential contract

19   loss as an injury to competition and consumer choice in that competition will be further

20   reduced and prices to consumers will continuously increase.  Id. at ¶¶ 85-86.  However,

21   "[m]ost buyers can purchase the Shimadzu parts at the list price communicated."  Id. at

22   ¶ 36. As such, the Court finds that no injury to consumers has resulted from defendant

23   implementing its repair parts policy.

24        A review of the complaint reveals that the antitrust allegations are speculative.

25   Plaintiff contends it properly pled antitrust injury due to its allegations that other

26   competitors suffer undue costs.  Doc. No. 21 at 16.  However, plaintiff did not provide

27   any factual allegations to show how consumers were injured by the repair parts policy.

28   See Doc. No. 1 at 9 ¶¶ 38-46.  The Court finds that plaintiff's complaint fails to allege an

1   antitrust violation with factual detail as plaintiff merely states legal conclusions of

2   allegedly unlawful and anti-competitive conduct by defendant.  See Les Shockley Racing,

3   Inc. v. Nat'l Hot Rod Ass'n, 884 F.2d 504, 507-508 (9th Cir. 1989).  Accordingly,

4   plaintiff's failure to allege causal antitrust injury serves as an independent basis for

5   dismissal.  LiveUniverse, Inc. v. MySpace, Inc., 304 Fed.Appx. 554, 557 (9th Cir. 2008).

6          Where, however, the same conduct is alleged to support both a plaintiff's federal

7   antitrust claims and state-law claim, a finding that the conduct is not an antitrust

8   violation precludes a finding of a violation of the state law claims.  See Carter v. Variflex,

9   Inc., 101 F.Supp.2d 1261, 1270 (C.D. Cal. 2000).  Plaintiff's third and sixth causes of

10  action allege an agreement in restraint of trade under the Cartwright Act, California

11  Business and Professions Code § 16720, and a violation of the UCL, California Business

12  and Professions Code § 17200, respectively.  See Doc. No. 1 at 18, 25.  Therefore,

13  defendant's motion to dismiss plaintiff's antitrust claims under the Sherman Act,

14  Cartwright Act, and the UCL is GRANTED.

15          B.      Interference Claims

16          Defendant contends that plaintiff's tortious interference with contractual relations

17  claim fails as a matter of law because plaintiff does not identify any valid contract

18  disrupted or wrongful actions by defendant's conduct.  See Doc. No. 5-1 at 22.  Also,

19  defendant contends plaintiff's tortious interference with prospective economic advantage

20  fails as a matter of law in that the complaint does not identify a single customer plaintiff

21  has lost due to defendant's policy or how defendant's actions proximately caused

22  economic harm.  Id. at 23.

23          Regarding the contract interference claim, plaintiff first argues that it need not

24  allege an actual or inevitable breach of contract in order to state a claim for disruption of

25  contractual relations and may instead plead that its performance became more costly or

26  more burdensome.  Doc. No. 21 at 22.  Second, plaintiff asserts it pleads more than

27  hypothetical damages by alleging the 40% increase in repair part purchase prices, delays,

28  and burdens of performance.  Id. at 23. And third, plaintiff contends that alleging contract

1    terms with third parties is not an element of the claim.  Id.  In addition, plaintiff argues

2    that defendant largely ignores its list of wrongful acts, any of which support a tortious

3    interference claim.  Id.

4           Addressing the prospective business advantage dismissal arguments, plaintiff argues

5    defendant's motion to dismiss should be denied as plaintiff pleads the requisite elements.

6    Id. at 25.   Specifically, plaintiff asserts the complaint sufficiently alleges economic

7    relationships with customers who did not renew or terminated contracts because

8    defendant's policies, identifying the third parties "in some manner;" and that defendant

9    is well-aware of the identities of plaintiff's customers through its repair parts policy.  Id.

10   at 25-26.  Plaintiff claims that the complaint pleads independent wrongful conduct and

11   the remaining elements of tortious interference such that defendant's arguments are not

12   adequate for dismissal.  Id. at 26-27.

13          In its reply, defendant argues the complaint fails to state a claim for intentional

14   interference with contractual relations as a matter of law as plaintiff does not allege any

15   contract with defendant or any customer requiring plaintiff to use Shimadzu replacement

16   parts.  Doc. No. 22 at 9.  Specifically, defendant contends that plaintiff's complaint

17   should be dismissed as plaintiff does not plead any facts that would support its allegation

18   that defendant interfered with plaintiff's ability to service its contracts.  Id. at 10.

19   Defendant also asserts that plaintiff's complaint fails to state a claim for tortious

20   interference with prospective economic advantage because plaintiff's unlawful acts rest on

21   its alleged antitrust violations.  Id. at 10.

22          Here, the complaint adequately alleges a factual basis to support an intentional

23   interference with contractual relations claim as facts are alleged concerning each element.

24   First, plaintiff alleges the existence of a service and repair contract between it and its

25   customers. Doc. No. 1 ¶ 129.  Second, plaintiff alleges defendant had knowledge of these

26   contracts through its repair parts policy after plaintiff began reporting parts needed for its

27   service jobs and the serial number of the instruments it serviced.  Id. at ¶ 130.  Third,

28   plaintiff alleges defendant intentionally disrupted the existing service contracts plaintiff

14cv1758

1  held with its customers.  Id. at ¶ 133.  And, plaintiff alleges both actual disruption and

2  damages in that its service contracts were disrupted by delays and a reduced inventory due

3  to the repair parts policy, along with damages resulting from financial loss, discontinued

4  accounts and terminated accounts. Id. at ¶ 141.

5        Claims for tortious interference with contract do not require a pleading that

6  defendant's conduct was independently wrongful because intentionally interfering with

7  contract is a wrong in and of itself.  Korea Supply, 29 Cal.4th at 1158.  Here, plaintiff's

8  allegation that ThermoFischer refused to sell it replacement parts it needed to fulfill a

9  customer's order due to the terms of ThermoFischer's agreement with defendant

10  sufficiently alleges an intentional interference with plaintiff's service contracts.  As such,

11  plaintiff's complaint states a claim for intentional interference with contractual relations.

12  Therefore, defendant's motion to dismiss plaintiff's intentional interference with

13  contractual relations claim in DENIED.

14        Unlike interference with contractual relations, a plaintiff alleging prospective

15  economic advantage interference is required to show a defendant's independently

16  wrongfulness outside the interference itself.  Id. at 1153.  This requires that the act

17  complained of be independently wrongful in violation of some constitutional, statutory,

18  regulatory, common law, or other determinable legal standard.  Id. at 1159.  Plaintiff's

19  antitrust allegations did not factually allege an antitrust injury as required for its claims

20  under the Sherman Act, Cartwright Act, and UCL.  Neither did plaintiff allege any

21  defendant conduct which violates any other legal proscription.  For that reason,

22  defendant's motion to dismiss plaintiff's tortious interference with prospective economic

23  advantage claim is GRANTED.

24        C.    Leave To Amend

25        It is well-established that a district court should grant leave to amend even if no

26  request to amend the pleading was made, unless it determines that the pleading could not

27  possibly be cured by the allegation of other facts.  Watison v. Carter, 668 F.3d 1108,

28  1117 (9th Cir. 2012).  Plaintiff requests leave to amend and asserts that its ready to add

1 | factual detail to its complaint.  Accordingly, the Court GRANTS plaintiff's request for

2 | leave to amend its complaint in a manner consistent with this order.  Plaintiff must amend

3 | its complaint before April 29, 2016.

4 |

5 |  Dated:  March 31, 2016

6 |

7 |  JOHN A. HOUSTON
 | United States District Judge

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

12